UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

Case Number:  23-1354
_____

ERIN KOSCH
Plaintiff-Appellant

v

TRAVERSE CITY AREA PUBLIC SCHOOLS and
CINDY BERCK
_____

ON APPEAL FROM THE U.S. DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN-SOUTHERN DIVISION
CASE NUMBER: 21-cv-00831
HONORABLE ROBERT J. YONKER, DISTRICT COURT CHIEF JUDGE
_____

**DEFENDANTS – APPELLEES' BRIEF ON APPEAL**

**ORAL ARGUMENT REQUESTED**

PREPARED BY:
GREGORY W. MAIR (P67465)
Attorney for Defendants
300 St. Andrews Road, Suite 302
Saginaw, MI  48638
(989) 790-0960
gmair@owdpc.com

## <u>DISCLOSURE OF CORPORATE AFFILIATIONS AND</u><br><u>FINANCIAL INTEREST</u>

Defendants – Appellees make the following disclosure pursuant to FRAP 26.1 and 6 Cir.R. 26.1:

1.    Are Defendants – Appellees a subsidiary or affiliate of a publicly owned corporation?

**No.**

2.    Is there a publicly owned corporation, not a party to the appeal that has a financial interest in the outcome?

**No.**

# **TABLE OF CONTENTS**

Index of Authorities………………………………………….……………….……iv

Statement in Support of Oral Argument ………………………….……………viii

Statement of Jurisdiction ………………………………………..……..…...ix

Statement of Issues Presented on Appeal…………………………………….…..x

Statement of the Case …………………………………………………….……1

Summary of the Argument …………………………………………….………… 12

Argument …………………………………………………………..…... 13

    I.     The District Court Correctly Held That Appellant Was Not
            Deprived of Procedural Due Process When She Resigned
            Her Position With TCAPS ………………………..……….…..…… 13

    II.    Dr. Berck is Entitled to Qualified Immunity and the Claims
            Against Her Should Be Dismissed….…………………………... 30

Conclusion ……………………………………………………..…….. 32

Certificate of Compliance ……………………………………..………….. 33

Addendum…………………………………………..………………….34

# INDEX OF AUTHORITIES

**CASES**                                                                                 **PAGES**

*Birmingham School District. v. Buck*
204 Mich. App. 286, 293, (1994)……………………………………………….23

*Bloch v. Ribar*
156 F.3d 673, 677 (6th Cir. 1998)………………………….…...…….21

*Block-Victor v. CITG Promotions, LLC*
665 F.Supp 2d 797, 806 (E.D. Mich. 2009)……………...………..……….25

*Chapman v. Houston Welfare Rts. Org.*
441 U.S. 600, 601 (1979)…………………………………………….………21

*Clayton v. Int'l Union, UAW*
451 U.S. 679, 692-96, 101 S.Ct. 2088, 2096-99, 68 L.Ed.2d
538 (1981)……………………………………………………....14, 15, 18

*Cleveland Bd of Ed v. Loudermill*
470 U.S. 532, 545-546, 105 S.Ct. 1487, 1495, 84 L.Ed.2d
494 (1985)……………………………………………………………...28, 29

*Cope v. Heltsley*
128 F.3d 452, 459 (6th Cir 1997)……….…………….….…………………31

*Daniels v. Williams*
474 US 327 (1986)…………………………….….…………………..31

*Doe v. Claiborne County*
103 F.3d 495, 505-06 (6th Cir. 1996)…………..….………………………..20

*Ellis v. Cleveland Mun. Sch. Dist.*
455 F.3d 690, 700 (6th Cir., 2006)…………………………………20, 21

*Harlow v. Fitzgerald*
457 US 800 (1982)………………………………………………………30

iv

*Lakeshore Pub. Schools Bd. Of Ed. v. Grindstaff (After Second Remand)*
    436 Mich. 339, 354-355, 461 N.W.2d 651 (1990)…………………………23

*Laster v. City of Kalamazoo*
    746 f3d 714 (6th Cir. 2014)……………………………….…….………….26

*LeGally v. Bronson Community Schools*
    127 Mich. App. 482, 485, 339 N.W.2d 223, 225 (1983)…………………18

*Lemon v. Williamson Cnty. Sch.*
    618 S.W.3d 1, 18 (Tenn. 2021)……………………………………………18

*Lewis v. Bridgman Pub. Schools (On Remand)*
    279 Mich. App. 488, 496-497, 760 N.W.2d 242 (2008)……………..……23

*Lillard v. Shelby Cnty. Bd. Of Educ.*
    76 F.3d 716 (6th Cir. 1996)…………………………………….……..21

*Mollet v. City of Taylor*
    197 Mich. App. 328, 336-337, 494 N.W.2d 832 (1992)…………………..18

*Monroe v. International Union, UAW*
    723 F.2d 22, 24 (6th Cir. 1983)……………………………………………15

*Parratt v. Taylor*
    451 US 527, 535 (1981)……………………………………………………21

*Potts v. Gobles Pub. Sch. Dist.*
    676 F.App'x 562, 565 (6th Cir. 2017)……..……………………14, 21, 22, 28

*Riciotti v. Warrick School Committee*
    *319 F. Supp 1 (R.I. Dist. Ct. 1970)*……………………………………19, 20

*Rockwell v. Crestwood School Distr. Bd. Of Educ.*
    393 Mich. 616, 635-36, 227 N.W.2d 736 (1975)…………….…………28

*Rogers v. Bd. Of Educ. Of Buena Vista Sch.*
    2 F.3d 163, 166 (6th Cir. 1993)…………….…………………………15

*Saroli v. Automation & Modular Components, Inc.*
　　405 F.3d 446, 451 (6th Cir. 2005)……………………………………………25

*Saylor v. Bd of Ed of Harlan County, Ky*
　　118 "F.3d 507, 515 (6th Cir 1997)…………………….………..………31

*Sheets v. Mullins*
　　287 F.3d 581, 586 (6th Cir 2002)…………………………………………..31

*Vagts v. Perry Drug Stores, Inc.*
　　204 Mich. App. 481, 487 (1994)……………….…………………………..25

*Wagner v. Gen. Dynamics*
　　905 F.2d 126, 127 (6th Cir. 1990)…………………….…..…………...15

*Ward v. Dyke*
　　58 F.3d 271 (6th Cir 1995)……………………….…..………………..30, 31

*Williams v. Detroit Dep't. of Educ.*
　　226 F.App'x 446, 448 (6th Cir. 2007)……………………..…………...26

*Williams v. Mehra*
　　186 F.3d 685, 691 (6th Cir. 1999)…………………………..……………30

*Williams v. Port Huron Sch. Dist.*
　　455 F App'x 612, 618 (6th Cir. 2012)……………………………………30

*Wilson v. Firestone Tire & Rubber Co.*
　　932 F2d 510 (6th Cir 1991)……………………………………………26

## COURT RULES AND STATUTES

MCL 38.101………………………………………….…..…..…………………22

MCL 38.104(5)(m)……………………………………..………………………23

MCL 38.139(1)…………………………………………….…………………..22

MCL § 423.201……..………………………………………….………..28

vi

MSA 17.455(1)…………………………………………...……….………28

Mich. Comp. Laws §§ 38.71 – 38.191………………….……….………17, 21, 22

28 U.S.C. § 1291……………………………………….………………..ix

28 U.S.C. § 1331………………………………….…..…………………ix

29 U.S.C. 151……………………………….………….…..………..14, 28

29 U.S.C. 185(a)………………………….………...………………14

42 U.S.C. § 1983……………………….…..………12, 13, 14, 20, 21, 31, 32

## **STATEMENT IN SUPPORT OF ORAL ARGUMENT**

Defendants – Appellees respectfully request that this matter be submitted for oral argument before this Honorable Court pursuant to Sixth Circuit Rule 34(a).  Oral argument in this case will serve as a productive tool in helping to clarify the issues before the Court. Specifically, it will allow the parties to clarify questions regarding the record in this case and the testimony of educators with regard to the factual circumstances that are at the legal and factual core of this matter. The opportunity to address these details in greater detail to this Honorable Court will aid in the decision-making process and allow the Court to resolve any further questions at their discretion, should the need arise.

## <u>STATEMENT OF JURISDICTION</u>

Defendants – Appellees state that the District Court had jurisdiction over this case pursuant to 28 U.S.C. § 1331 as this case involved federal questions of law.

On March 20, 2023, the District Court GRANTED Defendants-Appellees' Motion for Summary Judgment, and fully and finally adjudicated the last pending claims in this matter. This Court has jurisdiction to review that decision pursuant to 28 U.S.C. § 1291.  Plaintiff – Appellant timely noticed her appeal on April 13, 2023. This Court, therefore, may exercise jurisdiction over this appeal.

## <u>STATEMENT OF ISSUES PRESENTED ON APPEAL</u>

I.    WHETHER PLAINTIFF-APPELLANT'S CLAIM IS BARRED BECAUSE SHE FAILED TO EXHAUST HER ADMINISTRATIVE REMEDIES UNDER HER CONTRACT AND THE TRAVERSE CITY AREA PUBLIC SCHOOLS' MASTER AGREEMENT BEFORE BRINGING SUIT IN FEDERAL COURT?

     Defendants-Appellees would answer: "Yes."
     Plaintiff-Appellant would answer: "No."
     District Court of Western Michigan would answer: "Yes."

II.    WHETHER A SCHOOL DISTRICT DEPRIVES A TENURED TEACHER OF A PROPERTY RIGHT WHEN IT PLACES THEM ON PAID LEAVE PENDING INVESTIGATION?

     Defendants-Appellees would answer: "No."
     Plaintiff-Appellant would answer: "Yes."
     District Court of Western Michigan would answer: "No."

III.    WHETHER AN EMPLOYEE IS CONSTRUCTIVELY DISCHARGED WHEN A HOSTILE WORKING ENVIRONMENT DID NOT EXIST AND THE EMPLOYEE ADMITS THAT THE EMPLOYER DID NOT ADVOCATE FOR HER RESIGNATION?

     Defendants-Appellees would answer: "No."
     Plaintiff-Appellant would answer: "Yes."
     District Court of Western Michigan would answer: "No."

IV.    WHETHER A TENURED TEACHER IS PROVIDED ADEQUATE PROCEDURAL RIGHTS WHEN SHE IS GIVEN ORAL NOTICE OF THE CHARGES AGAINST HER, PROVIDED A UNION REPRESENTATIVE, AND PRESENTED WITH THE EVIDENCE AGAINST HER AT A PRELIMINARY MEETING?

     Defendants-Appellees would answer: "Yes."
     Plaintiff-Appellant would answer: "No."
     District Court of Western Michigan would answer: "Yes."

V.      WHETHER APPELLEE DR. CINDY BERCK WAS ENTITLED TO QUALIFIED IMMUNITY?

Defendants -Appellees would answer: "Yes."
Plaintiff-Appellants would answer: "No."
District Court of Western Michigan would answer: "Yes."

## STATEMENT OF THE CASE

### I.  The Video.

Plaintiff-Appellant Erin Kosch ("Appellant") was a tenured teacher at Traverse City Area Public Schools ("TCAPS") for many years. Appellant's resignation stems from a recording of comments she made while in a Google Meet virtual classroom. TCAPS was temporarily utilizing virtual classrooms due to COVID-19.  On October 22, 2020, two (2) students, L.H. and her friend, J.B., logged into their 6th hour history class with Appellant about nine (9) minutes early because they did not want to be late for the start of class. *L.H. Deposition*, RE 24-3, PageID# 153.  L.H said hello to the Appellant when she entered the virtual class and although Appellant did not respond, if she had looked at her computer at any time, she would have seen L.H on her screen.  *L.H. Deposition* RE 24-3, PageID# 154.  L.H. then heard Appellant call her students "little assholes," and she began to record so that she could show her mom the Appellant's behavior. *L.H. Deposition,* RE 24-3, PageID# 153.  L.H. then recorded Appellant in the virtual classroom and captured her speaking to her husband and paraphrasing a conversation she had with Assistant Principal, Benjamin Berger, regarding a situation where M.B. and other students were being disruptive in a virtual classroom "chat" session. *L.H. Deposition,* RE 24-3, PageID# 155.  While paraphrasing the conversation with the Assistant Principal, Appellant mentions M.B. by full name, refers to him as a culprit, and then goes on

1

to disparage Joyce Battle, M.B.'s mother and a teacher at TCAPS.  *L.H. Deposition,* RE 24-3, PageID# 155, *Joyce Battle Deposition*, RE 24-5, PageID# 187.

L.H. only told her mom about the video, but word of the video's existence got to M.B. and he asked L.H. if he could see the video. *L.H. Deposition,* RE 24-3, PageID# 156. Thereafter, the video was sent to other students and it became viral on social media. L.H. does not know who posted the video first and she did not ask M.B. if it was his idea to post the video, if he was the first person to post the video, or who else M.B. may have sent the video to. *L.H. Deposition*, RE 24-3, PageID# 157. L.H. does believe that another student, G.R., may have helped spread the video around. *L.H. Deposition*, RE 24-3, PageID# 156.  Both of M.B.'s parents, John and Joyce Battle, deny that they spread the video or that M.B. posted the video. *Joyce Battle Deposition*, RE 24-5, PageID# 187; *John Battle Deposition*, RE 24-6, PageID# 211. Ms. Battle confirmed that she only sent the video to Principal Jessie Houghton.  *Joyce Battle Deposition,* RE 24-5, PageID# 183.  Both Mr. and Ms. Battle had a family meeting and agreed to keep the video out of the public and only deal with school administration as it was humiliating and embarrassing to the family. *Joyce Battle Deposition,* RE 24-5, PageID# 189.

**II. Traverse City Area Public Schools Become Aware of the Video.**

The following Monday, October 26, 2022, Joyce Battle texted Jessie Houghton, the High School Principal, to send her the video and make a complaint.

*Deposition of Joyce Battle*, RE 24-5, PageID# 183.  On the same date, Mr. Battle informed Shaina Biller, TCAPS' Associate Superintendent at the time of this incident, of the existence of the video and made a formal complaint. *Email from Mr. Battle dated 10-26-20*, RE 24-7, PageID# 227.  After receiving the text from Mr. Battle, Ms. Houghton then informed Dr. Berck, TCAPS' Human Resources Director.  *Dr. Cindy Berck Deposition*, RE 24-8, PageID# 239.  Dr. Berck considered this an allegation of serious misconduct that would need further investigation. *Dr. Cindy Berck Deposition*, RE 24-8, PageID# 261. Dr. VanWagoner, TCAPS' Superintendent, then authorized Dr. Berck to place the Appellant on paid administrative leave to perform the investigation. *Superintendent Dr. VanWagoner Deposition*, RE 24-9, PageID# 353.  Paid administrative leave happens when there may be a serious issue that the District needs to get further information on. *Superintendent Dr. VanWagoner Deposition*, RE 24-9, PageID# 354. This contrasts with an unpaid suspension, which is issued when there is already sufficient evidence of wrongdoing. *Superintendent Dr. VanWagoner Deposition*, RE 24-9, PageID# 353. The purpose of paid administrative leave is to not have the person there so that an investigation and information can be collected for the protection of all parties. *Superintendent Dr. VanWagoner Deposition*, RE 24-9, PageID# 353. Dr. Berck then directed Appellant's supervisor, Ms. Houghton, to inform Appellant of the video and that she was being placed on a paid suspension and that a meeting and investigation

3

would ensue. *Dr. Cindy Berck Deposition*, RE 24-8, PageID# 246.

### III. Potential Violations of FERPA and TCAPS' Policy That Warranted Preliminary Investigation.

When Dr. Berck became aware of the video, she believed there was potentially serious misconduct that would need further investigation. *Dr. Cindy Berck Deposition* RE 24-8, PageID# 261.  One aspect of potential misconduct was a possible violation of the Family Educational Rights and Privacy Act ("FERPA"). The basis for the potential FERPA violation was that Appellant mentioned M.B. by full name to her husband and she referred to M.B. as a "culprit" in a disciplinary matter. *Dr. Cindy Berck Deposition*, RE 24-8, PageID# 242. Appellant made several acknowledgements during her deposition, including that she received FERPA training through TCAPS. *Plaintiff's Deposition*, RE 24-10, PageID# 373-374. She acknowledges that she identified a student by name and was discussing a student's behavior on the recorded video. *Plaintiff's Deposition*, RE 24-10, PageID# 373.  Dr. Berck had not made a determination as to whether Appellant definitively violated FERPA, as she wanted to learn more about the situation during the investigation. *Dr. Berck Deposition*, RE 24-8, PageID# 243.  Dr. Berck thought that the Appellant may have disclosed a student's behavior during a disciplinary matter as the word culprit implies discipline. *Dr. Berck Deposition*, RE 24-8, PageID# 251.  Upon seeing the video, TCAPS' Superintendent, Principal, Assistant Principal, and another teacher also believed there was a potential FERPA violation. *Jessie Houghton Deposition*,

4

RE 24-11, PageID# 418-419; *Ben Berger Deposition*, RE 24-12, PageID# 437; *Joyce Battle Deposition*, RE 24-5, PageID# 186; *Dr. VanWagoner Deposition*, RE 24-9, PageID# 357.

Dr. Berck was also concerned that the Appellant violated several other TCAPS policies. *Dr. Cindy Berck Deposition,* RE 24-8, PageID# 272-273. This includes TCAPS' policy for Student Supervision and Welfare, which amongst other potential violations, includes subsection "M" which states any staff member who shares confidential information, including a student's behavior and family background, is subject to discipline. *TCAPS Policy Manual, Section 3213*, RE 24-13, PageID# 443. Other potential violations included disclosing student records. *TCAPS Policy Manual, Section 8330*, RE 24-14, PageID# 445. An additional potential policy violation is the Staff Network and Internet Acceptable Use Policy, which Appellant may have violated by leaving her microphone and camera on and by disclosing personally identifiable information about students. *TCAPS Policy Manual, section 7540.04*, RE 24-15, PageID# 452. Disclosing personally identifiable information about students is by itself a violation of this section and does not require statements about behavior or discipline. *TCAPS Policy Manual, section 7540.04*, RE 24-15, PageID# 452. As a result of these potential violations of FERPA and school policy, Dr. Berck and TCAPS proceeded with an investigation to gather more information and make a final determination as to whether violations did, in

fact, occur and if discipline was necessary.

**IV. Preliminary Meeting and Resignation.**

To begin the preliminary investigation into Appellant's potential wrongdoing, she was placed on paid administrative leave. This is a typical procedure to investigate allegations of serious misconduct. *Dr. Berck Deposition*, RE 24-8, PageID# 261. Dr. Berck then set a preliminary meeting to speak with Appellant the day following her suspension, October 27, 2020. *Dr. Berck Deposition*, RE 24-8, PageID# 261. Dr. Berck informed Appellant that this was a preliminary meeting in response to a complaint about a video that could potentially result in disciplinary action and that she could choose to have a union representative with her if she would like. *Dr. Berck Deposition*, RE 24-8, PageID# 262.

Appellant then requested to have a lawyer present at the meeting because she did not think the union would represent her as she did not pay union dues. *Plaintiff Deposition*, RE 24-10, PageID# 388. However, contrary to Appellant's belief, the union would still represent her if there was a violation of the contract and Collective Bargaining Agreement ("CBA"). *McBride-Culver Deposition*, RE 24-16, PageID# 458. Dr. Berck informed Appellant that she could not have an attorney present because she was following the District's practice for teacher investigation. *Dr. Cindy Berck Deposition*, RE 24-8, PageID# 263. This practice allows an educator a union representative and the school's practice in these investigations is to not have an

attorney present at those preliminary meetings, especially if the District's attorney does not attend. *Deposition of Dr. Berck*, RE 24-8, PageID# 263. The only time attorneys have been involved on both sides is when the investigation gets to the point where discipline is being issued, and this meeting was only a preliminary information-gathering meeting where no discipline was being issued. *Deposition of Dr. Berck*, RE 24-8, PageID# 264. Appellant was aware of the basis for the investigation and allowed the Union President, Allison McBride-Culver, to represent her. *Plaintiff's Deposition*, RE 24-10, PageID# 388. Ms. McBride-Culver also acknowledged that the school's practice has been that attorneys are present only if both sides have them present. *Allison McBride-Culver Deposition*, RE 24-16, PageID# 464.

During the meeting, Dr. Berck informed the Appellant they were investigating her conduct that was recorded on the video for potential violations of FERPA and TCAPS' policies. *Deposition of Dr. Berck*, RE 24-8, PageID# 272. Dr. Berck did not get the opportunity to ask many questions regarding the investigation because shortly into the preliminary meeting, Appellant stated she did not know how she could ever recover from this incident. *Deposition of Dr. Berck*, RE 24-8, PageID# 294. Appellant specifically asked what her options were. *Deposition of Dr. Berck*, RE 24-8, PageID# 296. Dr. Berck did not tell Appellant she absolutely committed these violations, but that if the investigation showed that the violations did occur,

7

then it would be grounds for consideration of discipline which could result in tenure charges being advanced by the administration to the TCAPS Board of Education. *Deposition of Dr. Berck*, RE 24-8, PageID# 313-314. Importantly, Appellant believes that some form of discipline may have been appropriate for her due to her misconduct. *Plaintiff Deposition*, RE 24-10, PageID# 380. Dr. Berck did not tell Appellant that if she was discharged, she would have difficulty getting another job and maximizing her pension. *Deposition of Dr. Berck*, RE 24-8, PageID# 314.

Dr. Berck offered to show the Appellant the video at the preliminary meeting, however, she did not wish to view it at that time. *Deposition of Dr. Berck*, RE 24-8, PageID# 243. Instead, the Appellant requested to have the video sent to her following the meeting, which Berck forwarded shortly thereafter. *Deposition of Dr. Berck*, RE 24-8, PageID# 244. At the conclusion of the preliminary meeting, another meeting was scheduled for the next day to continue the investigation. *Deposition of Dr. Berck*, RE 24-8, PageID# 313.

Appellant informed Dr. Berck that she did not want this out in the media any more than it already was. *Plaintiff's Deposition*, RE 24-10, PageID# 391. The Appellant did not want the incident to become more public than it was because she was embarrassed. *Plaintiff's Deposition*, RE 24-10, PageID# 380. Appellant was also concerned with maximizing her pension at the thirty (30) year mark and did not want to take the chance of potential discipline affecting her pension. *Plaintiff's*

*Deposition*, RE 24-10, PageID# 383.  After the preliminary meeting with Dr. Berck, the Appellant received an email from a student who was criticizing her for her behavior on the video. *Student email*, RE 24-17, PageID# 481.  This email was very upsetting to the Appellant and she realized that this was on a much grander scale than she had previously thought. *Plaintiff's Deposition*, RE 24-10, PageID# 385. Thereafter, the Appellant sent an email stating her intention to resign, and that a formal resignation would come the following day. *Plaintiff e-mail resignation*, RE 24-18, PageID# 483 and *Plaintiff's formal resignation*, RE 24-19, PageID# 484.

Appellant was aware that she could provide a rebuttal statement within her resignation, but chose not to do so.  *Plaintiff's Deposition*, RE 24-10, PageID# 390. Her resignation did not include the words "involuntary" or "coerced." *Plaintiff's Deposition*, RE 24-10, PageID# 383. Appellant did not have anyone help her prepare her resignation and did it on her own accord. *Plaintiff's Deposition*, RE 24-10, PageID# 396. Appellant did not ask for more time for the investigation. *Plaintiff's Deposition*, RE 24-10, PageID# 382. Appellant was aware that her resignation proceeded before the Board of Education and was aware when this meeting was happening, but chose not to attend. *Plaintiff's Deposition*, RE 24-10, PageID# 383. Appellant did not regret her resignation until several months after she resigned. *Plaintiff's Deposition*, RE 24-10, PageID# 383.  Appellant never informed TCAPS that she felt her resignation was involuntary in nature until the filing of this lawsuit.

*Plaintiff's Deposition*, RE 24-10, PageID# 383.  In no way did Appellant ever try and retract her resignation and she has not inquired about rejoining TCAPS staff. *Plaintiff's Deposition*, RE 24-10, PageID# 371.  To date, Appellant never pursued any grievance related to the investigation regarding her resignation. *Plaintiff's Deposition*, RE 24-10, PageID# 381.  Appellant thinks that she was so emotionally distraught at the time that she resigned that she was not even thinking clearly. *Plaintiff's Deposition*, RE 24-10, PageID# 382.

### V. The District Court's Opinion and Order.

After hearing oral argument on the issue, Judge Jonker issued his Opinion and Order on March 20, 2023. *Opinion and Order*, RE 36, PageID# 1270-1287. That opinion included some critical findings and/or holdings:

- "Nothing Ms. Berck said or did prevented Ms. Kosch from consulting with counsel of her choice before or after the meeting." PageID#1274-75.

- "Ms. Kosch was not demoted, dismissed, discharged, or otherwise deprived of any protected interest under the MTTA."  PageID#1278.

- "Nothing prevented her from consulting with anyone she wished -- counsel or otherwise—before making that decision. So any policy TCAPS had or did not have about the presence of counsel is largely besides the point when it comes to assessing whether Ms. Kosch made a voluntary decision she later came to regret, or whether Defendants forced her into it." PageID#1280.

10

- "There is no evidence that the union representative gave Ms. Kosch incorrect information or otherwise deceived or misrepresented a material fact. Ms. Kosch does not claim that Ms. McBride (or anyone else) coerced or forced her resignation." PageID#1281.

- "As a matter of law, there is nothing so well-established about whether taping a "hot mic" moment where both the original taper (L.H.) and the speaker were lawfully present in the same virtual environment violates the Michigan eavesdropping statute that the Court is prepared to characterize the conduct as felonious."[1] PageID#1282.

- "There is no indication the union representative, the defendants or anyone associated with TCAPS placed any pressure on her to resign . . . .In sum, there is no issue for trial on constructive discharge." PageID#1283.

- "There is no question of material fact but that Ms. Kosch was provided the essential elements of due process by being given a pre-deprivation hearing. She was given notice of the hearing from the principal. And Ms. Kosch was given an opportunity to respond during the meeting." PageID#1284.

- Here, Ms. Kosch has adduced no evidence other than her conclusory assertion

---

[1] The District Court elaborates upon this at great length in a footnote. Within that footnote, they acknowledge that Appellant would have had to enter the virtual meeting room of her own accord and begin the broadcast herself, which is far different than a surreptitious recording the statute is meant to prevent.

that it would be futile to exhaust her administrative remedies. The record evidence is that the union representative would represent the contract for everyone, regardless of union status." PageID#1286.

- "Accordingly, she cannot demonstrate that she was constructively discharged and cannot demonstrate a procedural due process violation. Even if Ms. Kosch was constructively discharged, the defense is entitled to summary judgment in its favor because Ms. Kosch was required to exhaust her remedies under the CBA." PageID#1286.

## SUMMARY OF THE ARGUMENT

Appellant has brought the instant claim for procedural due process, alleging that Appellees denied her access to counsel, committed felonies in the name of constructively discharging her, and provided her with a union representative who was committing silent fraud. The record paints a picture that is exceedingly different. Instead, Appellant made a rash decision that she regrets and has come to realize that she could not place the genie back into the bottle. The District Court correctly held that Appellees did not violate the due process rights of the Appellant. Although Appellant admittedly voluntarily resigned from her position before any disciplinary investigation was completed and without formal tenure charges being filed, Appellant now brings forth allegations of violation of procedural due process pursuant to 42 U.S.C. § 1983 against Appellees, TCAPS and Dr. Cindy Berck.

Accordingly, Appellant's due process claims fail as she failed to exhaust her administrative remedies, resigned from her position before the investigation of discipline could proceed and due process was provided up to the point Appellant resigned.  Additionally, Appellant was not deprived of a property right and § 1983 claim fails as a matter of law because paid administrative leave for investigations does not qualify as the removal of such a right.  Further, Appellant was not terminated by the Appellees.

Appellant was not the subject of a constructive discharge. She cannot possibly show that an intolerable working environment existed a single day after the conduct that she was being investigated for. Neither can she show that Appellees had the intention to force her to resign, as she has admitted that she resigned well before the investigation had occurred, that Dr. Berck never advocated for her to choose resignation over contesting the charges, and that she did not grow to regret her resignation until months later.

Furthermore, Appellee, Dr. Berck, should be entitled to qualified immunity, as Appellant cannot show that she acted unreasonably under the factual circumstances to deprive Appellant of a clearly established constitutional right.

## **ARGUMENT**

## **I. THE DISTRICT COURT CORRECTLY HELD THAT APPELLANT WAS NOT DEPRIVED OF PROCEDURAL DUE PROCESS WHEN SHE RESIGNED HER POSITION WITH TCAPS.**

To establish a procedural due process claim pursuant to § 1983, plaintiffs must establish three elements: (1) that they have a life, liberty, or property interest protected by the Due Process Clause of the Fourteenth Amendment to the United States Constitution, (2) that they were deprived of this protected interest within the meaning of the Due Process Clause, and (3) that the state did not afford them adequate procedural rights prior to depriving them of their protected interest. *See Potts v. Gobles Pub. Sch. Dist., 676 F. App'x 562, 565 (6th Cir. 2017).*

### A. Plaintiff's § 1983 Claims Fail As A Matter Of Law Because She Failed To Exhaust Her Administrative Remedies.

Though not explicitly identified by Appellant, this labor and employment action involving a governmental employee is clearly governed by the National Labor Relations Act ("NLRA") and the Labor Management Relations Act. See 29 U.S.C. 151; 29 U.S.C. 185(a). The Supreme Court's decision in *Clayton v. Int'l Union, UAW,* 451 U.S. 679, 101 S.Ct. 2088, 68 L.Ed.2d 538 (1981), a case arising pursuant to § 301(a) of the Labor Management Relations Act, 29 U.S.C. 185(a), provides the appropriate test:

> As the Supreme Court stated in *NLRB v. Marine Workers,* 391 U.S. 418, 426, (1968) courts have discretion to decide whether to require exhaustion of internal union procedures. In exercising this discretion, at least three factors should be relevant: first, whether union officials are so hostile to the employee that he could not hope to obtain a fair hearing on his claim; second, whether the internal union appeals procedures would be inadequate either to reactivate the employee's grievance or to award him the full relief he seeks under § 301; and third, whether exhaustion of internal procedures

14

would unreasonably delay the employee's opportunity to obtain a judicial hearing on the merits of his claim. If any of these factors are found to exist, the court may properly excuse the employee's failure to exhaust.

See *Clayton v. Int'l Union, UAW,* 451 U.S. 679, 101 S.Ct. 2088, 68 L.Ed.2d 538 (1981). Exhaustion of internal administrative remedies is required before a tenured teacher can sue a school district for breach of a CBA or her union for breach of the duty of fair representation. *See Rogers v. Bd. of Educ. of Buena Vista Sch.*, 2 F.3d 163, 166 (6th Cir. 1993) (citing *Clayton v. International Union, UAW,* 451 U.S. 679, 692–96, 101 S.Ct. 2088, 2096–99, 68 L.Ed.2d 538 (1981) (requirement to exhaust internal remedies before bringing suit for breach of CBA and of the duty of fair representation).

As a general rule in cases to which federal law applies, federal labor policy requires that individual employees wishing to assert grievances must attempt use of the contract grievance procedure agreed upon by employer and union as the mode of redress before filing suit. *See Wagner v. Gen. Dynamics*, 905 F.2d 126, 127 (6th Cir. 1990). Moreover, inexcusable failure to exhaust union appeals bars suit not only against the union, but also against the employer. See *Monroe v. International Union, UAW,* 723 F.2d 22, 24 (6th Cir. 1983).

Further, the State Tenure Commission and the grievance process are not exclusive to dues-paying members of the union and her union status has nothing to do with her ability to pursue administrative remedies. There is no distinction

between a member of the union and a tenured teacher under the CBA.

Here, Appellant did not utilize or exhaust any of her administrative remedies. Appellant's contract holds that she is subject to the District's Master Agreement and any policies, rules, and regulations of the Board of Education. *Plaintiff's Contract*, RE 24-20, PageID# 485. TCAPS' Master Agreement contains the grievance process for tenured teachers. *Master Agreement*, RE 24-21, PageID# 486. A grievance is required when a teacher alleges there has been a violation, misrepresentation, or misapplication of the express terms of the agreement, including filing a grievance for a violation of the contract for coercing her resignation. *See Id.* Administrative procedures would have been adequate to address Appellant's complaints and the procedures would not have unreasonably delayed her ability to pursue arbitration or an appeal to the State Tenure Commission ("STC").

Appellant was aware that she could provide a rebuttal statement within her resignation, but chose not to do so. *Plaintiff's Deposition*, RE 24-10, PageID# 390. Appellant was aware that her resignation proceeded before, and was accepted by, the Board of Education and was aware when this meeting was happening, but chose not to attend or contest the same. *Plaintiff's Deposition*, RE 24-10, PageID# 383. Union President McBride-Culver confirmed that if Plaintiff felt she was threatened or there was any disciplinary violation, then she could have gone through the grievance process outlined in the Master Agreement. *McBride-Culver Deposition*,

RE 24-16, PageID# 461; *Master Agreement*, RE 24-21, PageID# 492. In no way did Appellant ever try and retract her resignation and she has not inquired about rejoining TCAPS staff. *Plaintiff's Deposition*, RE 24-10, PageID# 371. Appellant did not even regret her resignation until several months after she resigned. *Plaintiff's Deposition*, RE 24-10, PageID# 383. Appellant never informed TCAPS that she felt her resignation was involuntary in nature until the filing of this lawsuit. *Plaintiff's Deposition*, RE 24-10, PageID# 383. As such, she did not exhaust her administrative remedies and her pursuit of the instant action is barred. *See Rogers v. Bd. of Educ. of Buena Vista Sch at 66.*

> **i. Plaintiff Does Not Escape Her Exhaustion Requirements By Alleging Constructive Discharge or Denial of Counsel at the Investigative Meeting.**

Appellant alleges she was deprived of a property right pursuant to Michigan's Teachers' Tenure Act ("TTA"). Mich. Comp. Laws §§ 38.71–38.191. She also alleges that she was constructively discharged. The Appellant cannot enjoy the protections of the TTA and ignore its other requirements at her discretion. Specifically, Appellant cannot circumnavigate the exhaustion requirements of the TTA because she alleges she was constructively discharged. The TTA is not frustrated by Appellant's assertion of constructive discharge, as it provides:

> [t]he multi-layered procedure adopted in the Tenure Act, which are intended to give tenured teachers ample opportunity to be heard and ensure that dismissal decisions are made with transparency and by consensus of school administrators. Regardless of the reason for the

decision, a tenured teacher who quits and then sues on the basis of constructive discharge leapfrogs over those procedures and frustrates a major aim of the Act.

*See Lemon v. Williamson Cnty. Sch.*, 618 S.W.3d 1, 18 (Tenn. 2021). *See also Clayton v. International Union, UAW,* 451 U.S. 679, 692–96, 101 S.Ct. 2088, 2096–99, 68 L.Ed.2d 538 (1981) (requiring union members to exhaust internal union remedies before bringing suit for breach of CBA and of the duty of fair representation).

When a public employee's wrongful discharge claim is based on a theory of constructive discharge, the exhaustion of remedies requirement ***is not waived***. *See Mollett v. City of Taylor,* 197 Mich.App. 328, 336–337, 494 N.W.2d 832 (1992). (emphasis added). Additionally, in *LeGally v. Bronson Community Schools*, the Court heard an appeal from a school district regarding the Tenure Commission's decisions on an employee's appeal regarding a destructive discharge. *See LeGalley v. Bronson Cmty. Sch.,* 127 Mich. App. 482, 485, 339 N.W.2d 223, 225 (1983). In that case, the State Tenure Commission heard a complaint from an employee who was not covered by any collective bargaining agreement and who had a constructive discharge claim. *See Id*. This evidences the Commission's ability to hear Appellant's claims had she chose to do so.

Further, Appellant cannot escape these exhaustion requirements by claiming she was denied due process of an attorney at the initial investigative meeting.

18

Appellant cites caselaw from an irrelevant Rhode Island case, *Ricciotti v. Warrick School Committee*, 319 F Supp 1(R.I. Dist Ct 1970) apparently to argue that she could forgo administrative remedies because she was denied counsel's attendance at her preliminary meeting. In *Ricciotti*, the plaintiff was denied due process because he was not allowed counsel at arbitration, a quasi-judicial hearing. However, in this case, there was no quasi-judicial proceedings and the matter remained under a fact-finding investigation at the time of her sudden voluntarily resignation. Furthermore, the Court in *Ricciotti* found that plaintiff did not have to exhaust his administrative remedies due to futility, not because he was denied counsel. Here, exhaustion of administrative remedies would not have been futile for Appellant as the union was not hostile to her and she could have challenged her claimed constructive discharge to the TCAPS Board and ultimately, the State Tenure Commission.

Appellant argues that *Ricciotti* is also analogous to this case because it deals with an issue of conflict within union representation. Specifically, the conflict in *Ricciotti* dealt with the filling of a vacancy by a union member over another non-union employee. The *Riccioti* Court specifically found that a conflict existed in that instance because to represent the non-union employee in a grievance against the District would, per se, require the displacement of a union employee from his current position. Herein, the factual circumstances are far from analogous. The potential discipline faced by Appellant and the grievance which was apparently to be filed by

Joyce Battle were not adversarial in nature. Appellant acknowledges this fact in Footnote Fourteen (14) of her Appellate Brief – the grievance to be filed by Ms. Battle was to be against TCAPS for a hostile work environment. Both "proceedings" involved conflict with teachers and the District, not two (2) teachers competing for the same open vacancy, as in *Ricciotti*. Furthermore, no grievance had been filed as of the time of the investigative meeting, and continued representation of Appellant would have undoubtedly required a discussion with Joyce Battle eventually, rendering the discussion with Ms. McBride-Culver even more of a meritless concern in determining whether Appellees provided due process.

### B. Appellant's § 1983 Claim Fails As A Matter Of Law Because Appellees Did Not Deprive Her Of A Constitutional Right.

Even if Appellant's claim can proceed after failing to exhaust her administrative remedies, Appellant's claim still fails as a matter of law because TCAPS did not deprive Appellant of a constitutionally protected right. A § 1983 suit against a municipality, such as a school district, "must be examined by applying a two-pronged inquiry: (1) Whether the plaintiff has asserted the deprivation of a constitutional right at all; and (2) Whether the [municipality] is responsible for that violation." *Doe v. Claiborne County*, 103 F.3d 495, 505-06 (6th Cir. 1996). In satisfying the second prong of this inquiry, "A plaintiff who sues a municipality for a constitutional violation under § 1983 must prove that the municipality's policy or custom caused the alleged injury." *Ellis v. Cleveland Mun. Sch. Dist.*, 455 F.3d 690,

700 (6th Cir., 2006). In this case, Appellant cannot establish either inquiry. The Plaintiff's Fourth Amendment claims are correctly analyzed under the Fourteenth Amendment due process framework. *Lillard* v. *Shelby Cnty. Bd. of Educ*., 76 F.3d 716 (6th Cir. 1996). A prima facie case under §1983 has two elements: "(1) the defendant must be acting under the color of state law, and (2) the offending conduct must deprive the plaintiff of rights secured by federal law." *Bloch v. Ribar*, 156 F3d 673, 677 (6th Cir 1998) (citing *Parratt v. Taylor*, 451 US 527, 535 (1981)). §1983 is not itself a source of substantive rights, but merely provides a method for vindicating federal rights elsewhere conferred. *See Chapman v. Houston Welfare Rts. Org.*, 441 U.S. 600, 601 (1979).

Appellant alleges she was deprived of a property right pursuant to Michigan's Teachers' Tenure Act, Mich. Comp. Laws §§ 38.71–38.191. The Act's language—the source of the property interest—provides the scope. *See Potts v. Gobles Pub. Sch. Dist.*, at 565. Here, the property interest granted by the Teacher Tenure Act is one in "continuing tenure." *See* Mich. Comp. Laws § 38.91(1); *Potts* at 565. Continuing tenure is provided as follows: After the satisfactory completion of the probationary period, a teacher is considered to be on continuing tenure under this Act. A teacher on continuing tenure *shall be employed continuously* by the controlling board under which the probationary period has been completed *and shall not be dismissed or demoted* except as specified in this Act. See Mich. Comp. Laws

§ 38.91(1) (emphasis added). Section 38.74 of the Act defines "demote," in relevant part, as suspension *without pay* for fifteen (15) or more consecutive days. Therefore, the Act provides teachers with an employment interest in not being "dismissed or demoted" except as provided for in the Act. Courts have found that a five (5) day suspension did not implicate due process property rights because it was not a "demotion" under the Teacher Tenure Act. *See Potts* at 566. Here, Appellant was not disciplined as she was not dismissed or demoted within the meaning of the Act. Appellant was placed on paid administrative leave for a total of one (1) day before she resigned on her own accord. As such, she was never deprived of a property right by the school.

Indeed, Appellant has acknowledged that TCAPS did not terminate her employment. *Plaintiff's Deposition*, RE 24-10, PageID# 384. Appellant also admits she was not issued discipline by TCAPS because she resigned before the disciplinary stage of the investigation. *Plaintiff's Deposition*, RE 24-10, PageID# 392.

Michigan's Tenured Teachers Act statutorily regulates the process for terminating a tenured teacher. *See MCL 38.101*. To terminate a tenured teacher, the school administration must first present tenure written charges to the Board of Education. Then, at a Board of Education meeting, the Board decides whether to proceed with the written charges. The STC shall act as a board of review for all cases appealed from the decision of a controlling board of education. MCL 38.139(1). The

Legislature has vested the STC with decision-making authority regarding the appropriate penalty for teacher misconduct. *Lewis v. Bridgman Pub. Schools (On Remand),* 279 Mich. App. 488, 496–497, 760 N.W.2d 242 (2008). In an appeal to the STC, the STC reviews de novo all questions of fact and law decided by the school board. *Lakeshore Pub. Schools Bd. of Ed. v. Grindstaff (After Second Remand),* 436 Mich. 339, 354–355, 461 N.W.2d 651 (1990). The STC has the power and authority to take additional testimony and determine all issues of fact and law decided by a school board. *Birmingham School Dist. v. Buck,* 204 Mich. App. 286, 293 (1994). STC has authority to "adopt, modify, or reverse the preliminary decision and order" of the hearing officer. MCL 38.104(5)(m); see *Lewis, supra* at 496. In this case, written charges were never even brought by the TCAPS administration to the TCAPS Board of Education. Therefore, tenure charges were never presented and the Board of Education never terminated Plaintiff's contract. As such, TCAPS never deprived Plaintiff of a constitutional right.

### C. Appellee was not Constructively Discharged.

Additionally, Appellant was not coerced into her resignation and otherwise was not constructively discharged. Appellant has acknowledged that Dr. Berck did not advocate for her to make a decision either way. *Plaintiff's Deposition*, RE 24-10, PageID# 382. Furthermore, Appellant never attempted to retract her resignation, did not attend the Board of Education hearing regarding her resignation, never

informed TCAPS that she believed the resignation was involuntary, and she herself did not regret the resignation until several months later. Union President, Ms. McBride-Culver, who was present at the preliminary meeting as a union representative for Appellant, confirmed that the administration did not force Appellant to resign, did not threaten her to resign, and that the resignation was not coerced by administration in any way. *McBride-Culver Deposition*, RE 24-16, PageID# 461. Furthermore, if Appellant felt she was threatened, she could have gone through a grievance process with the union. Plaintiff never came to Ms. McBride-Culver after the resignation asking for assistance to submit a grievance. *McBride-Culver Deposition*, RE 24-16, PageID# 461. Appellant says this best in her own words:

> Q. And she (Dr. Berck) didn't advocate for you to make a decision one way or the other; correct?
> A. She did not.
> Q. Did you ever propose any other options going forward other than what had been presented to you?
> A. I did not.
> Q. Any reason why not?
> A. I think I was just so emotionally distraught, I was not even thinking clearly.
> Q. Did you ever ask for more time?
> A I did not.

*Plaintiff's Deposition*, RE 24-10, PageID# 382.

"[C]onstructive discharge is not in itself a cause of action" but, rather, "a defense against the argument that no suit should lie in a specific case because the

24

plaintiff left the job voluntarily."[2] *Vagts v. Perry Drug Stores, Inc.*, 204 Mich. App. 481, 487, (1994). Nonetheless, to prove a constructive discharge, the plaintiff must produce evidence showing that: (1) the employer deliberately created intolerable working conditions as perceived by a reasonable person; and (2) the employer did so with the intention of forcing the employee to quit. *See Block-Victor v. CITG Promotions, L.L.C.*, 665 F. Supp. 2d 797, 806 (E.D. Mich. 2009) (*citing Saroli v. Automation & Modular Components, Inc.,* 405 F.3d 446, 451 (6th Cir.2005)). Relevant factors in determining whether a reasonable person would have felt compelled to resign include whether there was: (1) a demotion; (2) a reduction in salary; (3) a reduction in job responsibilities; (4) a reassignment to menial or degrading work; (5) a reassignment to work under a younger supervisor; (6) badgering, harassment, or humiliation by the employer calculated to encourage resignation; or (7) offers of early retirement or continued employment on terms less favorable than the employee's former status. *See Saroli,* 405 F.3d at 451. The issue of the employer's intent focuses on "the reasonably foreseeable impact of the employer's conduct upon the employee." *See Block-Victor v. CITG* at 807 (*citing Held v. Gulf Oil Co.,* 684 F.2d 427, 432 (6th Cir.1982)).

---

[2] Appellant cites to Michigan Civil Jury Instruction 105.05 as evidence that the District Court committed reversible error. This is of no merit given that the instruction is meant for employment discrimination cases, rather than the instant case where Plaintiff has claimed no discrimination, but rather a violation of her due process rights.

In *Williams v. Detroit Dep't of Educ*, the Court found that the plaintiff failed to show that his working conditions were intolerable enough to establish a constructive discharge, and the plaintiff could not claim that he was constructively discharged simply because the district advised him that he might lose his pension if disciplined by the Teacher Tenure Commission. 226 F. App'x 446, 448 (6th Cir. 2007). Additionally, the Court in *Laster v City of Kalamazoo*, 746 F3d 714 (6th Cir 2014), held an employer was not liable for wrongful discharge when an employee chose to retire before a disciplinary hearing after he was erroneously informed that he would lose health insurance if he was terminated, as there was no evidence that the misinformation was provided purposefully to induce plaintiff to quit. *See also Wilson v Firestone Tire & Rubber Co*, 932 F2d 510 (6th Cir 1991). Here, Appellant was not told that she would lose her pension if she was terminated and tenure charges had not been prepared as of her voluntary resignation. She was only informed of all possible outcomes of the investigation after asking what her options were.

In this case, TCAPS did nothing to deliberately make the working conditions intolerable for Appellant so that she felt compelled to resign, and TCAPS did not intend for her to quit. She admittedly resigned after one (1) day into the investigation and did not give the opportunity for her working conditions to become difficult or unpleasant to the point she was compelled to resign. Furthermore, none of the seven (7) applicable factors outlined above are applicable to Appellant. Appellant's claims

that she was harassed, badgered, and threatened are not supported in the record. The District Court found the opposite to be true – Appellant was provided with professional and courteous representation by Ms. McBride-Culver and did not have material facts represented to her. Discussion of eventual outcomes of the potential investigation occurred only after Appellant requested the same. *Deposition of Dr. Berck*, RE 24-8, PageID# 296. Appellant cannot rely on the stress of the investigation and the due process meeting to meet this requirement, lest every individual under investigation could claim constructive discharge.  As such, Appellant can point to no applicable conduct that caused her resignation and she meets none of the requisite elements or factors for constructive discharge. The real reason for Appellant's resignation is clear – "I think I was just so emotionally distraught, I was not even thinking clearly." However, even the best employers cannot be responsible for the emotional state of their employees and cannot make wise decisions for them.

### D. Appellant's Claim Fails Because Appellees Afforded Her Adequate Procedural Rights.

Even if the Court determines that Appellant was deprived of a property right, her claim will still fail because she was provided adequate due process. Appellant was provided with adequate process throughout the time of the investigation and until she resigned. TCAPS and Dr. Berck followed school policy by placing Appellant on paid administrative leave and she was provided representation through

the Union. *TCAPS policy section 3139-Teacher Discipline*, RE 24-22, PageID# 546. In *Potts v. Gobles*, the Court found that there was adequate process when the plaintiff had met with the superintendent, was made aware of the allegation, and was given an opportunity to present his side of the story. In the circumstances of that short term suspension, due process required nothing more. See *Potts* at 567 (citing *Loudermill*, 470 US 532, 546, 105 S.Ct. 1487(holding that, prior to *termination*, "[t]he tenured employee is entitled to *oral or written* notice of the charges against him, an explanation of the employee's evidence, and an opportunity to present his side of the story").

Appellant specifically alleges that the refusal of counsel's attendance at a preliminary meeting violated her due process rights. However, the attendance of counsel at a preliminary meeting where no discipline is being charged is not a right the Appellant enjoys.[3] A teacher's pretermination hearing is not a full, adjudicatory

---

[3] It should be noted that on January 23, 2023, Judge Hamlyn of the Grand Traverse County Circuit Court Granted Defendants' Motion for Summary Disposition and dismissed the Appellant's state claims in their entirety. Specific to the claims herein, the Court found that Plaintiff was required to exhaust her administrative remedies and failed to do so. Plaintiff's labor and employment action involving a governmental employee is governed by the Public Employment Relations Act (PERA), MCL § 423.201 *et seq.;* MSA 17.455(1) *et seq.* The PERA is patterned after the federal National Labor Relations Act (NLRA), 29 U.S.C. 151. In construing and applying PERA, the Michigan Supreme Court has held that the Michigan legislature intended Michigan courts to rely on analogous federal precedent. *Rockwell v. Crestwood School Dist. Bd. of Educ.,* 393 Mich. 616, 635–36, 227 N.W.2d 736 (1975).

hearing to which a full range of procedural safeguards attaches. The purpose of a pretermination hearing, unlike a full post-termination adjudicatory proceeding, is not to definitively resolve the propriety of the discharge ... [but to provide] an initial check against mistaken decisions—essentially, a determination of whether there are reasonable grounds to believe that the charges against the employee are true and support the proposed action. *See Cleveland Bd of Ed v. Loudermill,* 470 U.S. 532, 545–546, 105 S.Ct. 1487, 1495, 84 L.Ed.2d 494 (1985). *To require more than this prior to termination* would intrude to an unwarranted extent on the government's interest in quickly removing an unsatisfactory employee. [*Id.,* 470 U.S. p. 546, 105 S.Ct. p. 1495. Citations omitted; emphasis added.]

In the case at bar, **the proceedings had not even escalated to a pre-termination hearing.** Despite the meeting that occurred being only an investigative meeting, Appellant was given notice of the allegations against her, an explanation of the evidence of the allegations, and an opportunity for her to present her side of the story. *Dr. Berck Notes*, RE 24-23, PageID# 548.  When Appellant was given an opportunity to present her side of the story, she said she did not know how she would recover from this and asked about her options. Appellant thereafter resigned before any investigation or process could continue. Indeed, even Appellant agrees it was appropriate for TCAPS to place her on paid leave pending the investigation into her conduct. Appellant also acknowledges that she resigned before the investigation was

completed. Appellant also did not expect the investigation to be completed the day following the preliminary meeting. Appellant acknowledges that tenure charges were never brought to the Board by the administration. As such, the Appellees provided Appellant with adequate due process.

## II.    DR. BERCK IS ENTITLED TO QUALIFIED IMMUNITY AND THE CLAIMS AGAINST HER SHOULD BE DISMISSED.

Dr. Berck is entitled to qualified immunity as to Appellant's §1983 claims for the alleged violation of her equal protection and due process rights. Government officials performing discretionary duties are generally shielded from liability for civil damages insofar as they could have reasonably believed that their conduct did not violate clearly established statutory or constitutional rights.    *Harlow v Fitzgerald*, 457 US 800 (1982); *Ward v Dyke*, 58 F 3d 271 (6th Cir 1995).  The qualified immunity doctrine protects "all but the plainly incompetent or those who knowingly violate the law." *Williams v. Port Huron Sch. Dist*., 455 F App'x 612, 618 (6th Cir. 2012).  The Sixth Circuit considers first, whether a constitutional violation has occurred; second, whether the right that was violated was a clearly established right of which a reasonable person would have known; and third, whether the plaintiff has alleged sufficient facts, and supported the allegations by sufficient evidence, to indicate that what the official allegedly did was objectively unreasonable in light of the clearly established constitutional rights.  *Williams v Mehra,* 186 F 3d 685, 691 (6th Cir 1999).

To be clearly established at the time of the alleged deprivation, the law must be clear in regard to the official's particular actions in the particular situation. *Ward*, at 373; *Saylor v Bd of Ed of Harlan County, Ky*, 118 F 3d 507, 515 (6th Cir 1997). For qualified immunity to be surrendered, "pre-existing law must dictate, that is, truly compel (not just suggest or allow or raise a question about), the conclusion for every like-situated, reasonable government agent that what [he] is doing violates federal law *in the circumstances*." *Id*.; *Cope v Heltsley*, 128 F3d 452, 459 (6th Cir 1997). Teachers and administrators are governmental officials protected by qualified immunity under appropriate circumstances. *Saylor v Board of Education*, 118 F3d 507, 512-513 (6th Cir 1997). The "ultimate burden of proof is on the plaintiff to show that the defendant is not entitled to qualified immunity." *Sheets v Mullins,* 287 F 3d 581, 586 (6th Cir 2002). As the Supreme Court held in *Daniels v Williams*, 474 US 327 (1986), a §1983 claim cannot be premised on negligent conduct. It is only where the state takes deliberate action that the Fourteenth Amendment is implicated. *Id*. at 330-332.

With respect to Dr. Berck, there is no question that she is entitled to qualified immunity and dismissal from this action. There is no evidence upon which to conclude that either of the Appellees violated any federal, constitutional, or statutory rights, as laid out in detail above. Further, Appellant has failed to plead sufficient facts showing that Dr. Berck's conduct was objectively unreasonable. In fact, any

objective juror would believe that Dr. Berck was reasonable by following direction from her supervisor and TCAPS school procedure. Indeed, Appellant cannot meet any of the three (3) elements of qualified immunity. Appellant cannot show that a constitutional violation has occurred because the record does not support any such violations. Consequently, Appellant cannot show that her alleged violations were based upon a clearly established right that a reasonable person would have known. Even construing the evidence in the light most favorable to the Appellant, she cannot show that the conduct of Dr. Berck or TCAPS was deliberate in nature, which would be required to prove her §1983 in avoidance of qualified immunity. Lastly, Appellant cannot establish that either Appellee acted objectively unreasonable in response to the incident described above. Therefore, she is entitled to qualified immunity and summary judgment is appropriate.

## **CONCLUSION**

Defendants-Appellees respectfully request that this Honorable Court AFFIRM the Judgment of the District Court.

Respectfully submitted,


/s/ Gregory W. Mair

Dated: August 29, 2023         GREGORY W. MAIR (P67465)
Attorney for Appellees
300 St. Andrews Road, Suite 302
Saginaw, MI 48638
(989) 790-0960
gmair@owdpc.com

## <u>CERTIFICATE OF COMPLIANCE</u>

Pursuant to 6th Cir.R. 32(a)(7)(c), the undersigned certifies this brief complies with the type-volume limitations of 6th Cir.R. 32(a)(7)(B).

1.    EXCLUSIVE OF THE EXEMPTED PORTIONS IN 6TH CIR.R. 32(f), THE BRIEF CONTAINS:

    A.    9,189 words.

2.    THE BRIEF HAS BEEN PREPARED:

    B.    in proportionally spaced typeface using: "New Times Roman" in font size 14.

Respectfully Submitted,

/s/ Gregory W. Mair

Dated: August 29, 2023    GREGORY W. MAIR (P67465)
Attorney for Appellees
300 St. Andrews Road, Suite 302
Saginaw, MI 48638
(989) 790-0960
gmair@owdpc.com

## ADDENDUM – RELEVANT DISTRICT COURT DOCUMENTS

| REF. NUMBER | DOCUMENT DESCRIPTION | PAGE ID# |
| --- | --- | --- |
| 24-3 | L.H. Deposition | 150-172 |
| 24-5 | Joyce Battle Deposition | 174-204 |
| 24-6 | John Battle Deposition | 205-226 |
| 24-7 | Email from Mr. Battle dated 10-26-20 | 227 |
| 24-8 | Dr. Cindy Berck Deposition | 228-348 |
| 24-9 | Superintendent Dr. VanWagoner Deposition | 349-366 |
| 24-10 | Plaintiff's Deposition | 367-411 |
| 24-11 | Jessie Houghton Deposition | 412-430 |
| 24-12 | Benjamin Berger Deposition | 431-442 |
| 24-13 | TCAPS Policy Manual, Section 3213 | 443-444 |
| 24-14 | TCAPS Policy Manual, Section 8330 | 445-451 |
| 24-15 | TCAPS Policy Manual, Section 7540.04 | 452-454 |
| 24-16 | Allison McBride-Culver Deposition | 455-480 |
| 24-17 | Student Email | 481-482 |
| 24-18 | Plaintiff's Email Resignation | 483 |
| 24-19 | Plaintiff's Formal Resignation | 484 |
| 24-20 | Plaintiff's Contract | 485 |
| 24-21 | Master Agreement | 486-545 |

24-22          TCAPS Policy Manual, Section 3139          546-547

24-23          Dr. Berck Notes          548

36          Opinion and Order          1270-1287